

FILED

10 MAR 10 PM 3: 28

CLERK U.S. DISTRICT COURT.
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  VANESSA H. WIDENER (Bar No. 203967)
   vhw@amclaw.com
2  JENNIFER S. MUSE (Bar No. 211779)
   jsm@amclaw.com
3  ANDERSON, McPHARLIN & CONNERS LLP
   Thirty-First Floor
4  444 South Flower Street
   Los Angeles, California 90071-2901
5  TELEPHONE: (213) 688-0080 ♦ FACSIMILE: (213) 622-7594

6  Attorneys for Plaintiff FEDERAL
   DEPOSIT INSURANCE
7  CORPORATION as Receiver for
   INDYMAC BANK, F.S.B.

8

9

10          UNITED STATES DISTRICT COURT

11    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12
   FEDERAL DEPOSIT INSURANCE          Case No. **CV10-01758-ODW**
13 CORPORATION as Receiver for                    (RCx)
   INDYMAC BANK, F.S.B.,
14
              Plaintiff,
15                                     COMPLAINT FOR:
         vs.                           1. BREACH OF CONTRACT;
16                                     2. PROFESSIONAL NEGLIGENCE;
   RPM MORTGAGE, a California          3. SPECIFIC PERFORMANCE;
17 corporation dba PLATINUM CAPITAL    4. FRAUD;
   GROUP, a California corporation;    5. NEGLIGENT
18 PLATINUM CAPITAL GROUP, a              MISREPRESENTATION
   California corporation; SKYLINE
19 FINANCIAL CORP., a California
   corporation; SKYLINE FINANCIAL
20 CORP. dba STRATFORD, business
   entity unknown and STEPHANIE
21 GREEN, an individual,

22              Defendants.

23

24       Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver

25 for INDYMAC BANK, F.S.B. ("FDIC"), herein for claims against defendants RMP

26 MORTGAGE dba PLATINUM CAPITAL GROUP; PLATINUM CAPITAL

27 GROUP; SKYLINE FINANCIAL CORP. dba STRATFORD; and STEPHANIE

28 GREEN alleges as follows:

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

781498.1 5662.089

## COMMON ALLEGATIONS
### *JURISDICTION AND VENUE*

1.     The FEDERAL DEPOSIT INSURANCE CORPORATION is a government entity appointed by the Office of Thrift Supervision to act as Receiver for INDYMAC BANK, F.S.B ("INDYMAC") pursuant to 12 U.S.C. 1821(d)(2)(B).

2.     INDYMAC was a FDIC-insured financial institution which was authorized to do business in the State of California and in the County of Los Angeles, among other counties.

3.     The FDIC and INDYMAC shall collectively be referred to herein as "FDIC/INDYMAC."

4.     The FDIC is informed and believes and thereon alleges that defendant PLATINUM CAPITAL GROUP is a California corporation with its principal place of business in Manhattan Beach, California.  At the time of the subject transactions, PLATINUM CAPITAL GROUP was a licensed mortgage broker doing business in Idaho and California and was engaged in the business of processing, packaging and selling loans secured by real property.

5.     The FDIC is informed and believes and thereon alleges that defendant RPM MORTGAGE, INC. ("RPM MORTGAGE") is a California corporation with its principal place of business in Walnut Creek, California.  RPM MORTGAGE is a licensed mortgage broker engaged in the business of processing, packaging and selling loans secured by real property.  At all times herein, RPM MORTGAGE was doing business as PLATINUM CAPITAL GROUP.  RPM MORTGAGE and PLATINUM CAPITAL GROUP are collectively herein referred to as "PLATINUM CAPITAL".

6.     The FDIC is informed and believes and thereon alleges that defendant SKYLINE FINANCIAL CORP. ("SKYLINE") is a California corporation with its principal place of business in Encino, California.  At the time of the subject transactions, SKYLINE was a licensed mortgage broker and was

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL. (213) 688-0080 • FAX (213) 622-7594

1  engaged in the business of processing, packaging and selling loans secured by real

2  property. The FDIC is further informed and believes that at all relevant times

3  alleged herein SKYLINE was also doing business in Idaho and California as

4  unknown business entity known as STRATFORD.

5  7. The FDIC is informed and believes and thereon alleges that at all

6  relevant times herein, defendant STEPHANIE GREEN ("GREEN"), sued herein in

7  her individual capacity, is an individual residing in the State of California, and is a

8  licensed real estate agent. At all times alleged herein GREEN was an employee

9  and/or agent of defendants RPM MORTGAGE, PLATINUM CAPITAL, SKYLINE

10  and STRATFORD.

11  8. This Court has original jurisdiction to hear this matter pursuant

12  to 28 U.S.C. § 1331 since all suits to which the FDIC is a party are deemed to arise

13  under the law of the United States. (12 U.S.C. §1819(b)(2)(A).)

14  9. The FDIC is informed and believes and thereon alleges that each

15  of the defendants is, and at all times relevant herein was, the agent and/or employee

16  of each of their co-defendants, and in committing the acts herein alleged, was acting

17  within the scope of their authority as such agents and/or employees, and with the

18  permission and consent of their co-defendants.

19  10. Venue is proper in the Central District of California, pursuant to

20  28 U.S.C. § 1391, in that a substantial portion of the events giving rise to this claim

21  occurred in the County of Los Angeles, State of California, including that

22  PLATINUM and SKYLINE's principal places of business are Los Angeles County,

23  GREEN is a resident of Los Angeles County, and PLATINUM CAPITAL and

24  SKYLINE entered into the contracts at issue herein in the County of Los Angeles.

25  GREEN, PLATINUM CAPITAL and SKYLINE are subject to personal jurisdiction

26  in this district at the time the action is commenced and have sufficient minimum

27  contacts with the County of Los Angeles.

28

3

COMPLAINT FOR BREACH OF CONTRACT; NEGLIGENT MISREPRESENTATION; FRAUD

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1

## GENERAL ALLEGATIONS

2    11.    On March 20, 2000, INDYMAC entered into a Seller Contract

3    and e-MITS™ User Agreement with PLATINUM CAPITAL ("Platinum

4    Agreement."). A true and correct copy of the Platinum Agreement is attached

5    hereto as Exhibit 1.

6    12.    The Platinum Agreement sets forth terms and conditions

7    pursuant to which INDYMAC would purchase and/or fund loans processed,

8    packaged and submitted by PLATINUM CAPITAL. The Platinum Agreement also

9    provides that these loans must satisfy specified criteria, in accordance with

10   INDYMAC's underwriting requirements, all as more fully set forth in the Platinum

11   Agreement.

12   13.    The Platinum Agreement provides the following:

13   . . . Seller desires to do one or more of the following:
     (1) sell mortgage loans to Company, (2) service mortgage
14   loans for Company, and/or (3) submit mortgage loans to
     Company for table funding, and Company desires to do
15   one or more of the following: (1) purchase mortgage loans
     from Seller, (2) have Seller service mortgage loans for the
16   Company, and/or (3) fund mortgage loans submitted by
     Seller to Company for table funding, in each case,
17   pursuant to the terms of this Contract, the IndyMac Seller
     Guide, as amended, supplemented or otherwise modified
18   from time to time (the "Seller Guide"), and the e-MITS™
     User Guide (the "e-MITS™ Guide") (the Seller Guide and
19   the e-MITS™ Guide are collectively referred to as the
     "Guide") and any Master Commitments entered into
20   between Seller and Company. . . .

21   ***

22   1.    Seller's Duties. Seller shall diligently perform all
     duties incident to the sale, servicing and/or table funding,
23   as applicable, of all mortgage loans which may be sold by
     Seller to, serviced by Seller for, and/or delivered by Seller
24   for table-funding by Company from time to time and such
     other mortgage loans as Company and Seller may
25   mutually agree upon. In the performance of such duties,
     Seller shall comply with all of the applicable provisions of
26   the Guide and with all other reasonable requirements and
     instructions of Company. . . .

27   / / /

28   / / /

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL. (213) 688-0080 • FAX (213) 622-7594

14. The Platinum Agreement provides the following with regard to indemnification:

15. <u>Indemnification by Seller.</u> Seller shall promptly indemnify, defend and hold Company from and against all losses, claims, demands, actions or causes of action, liabilities, damages, penalties, fines, forfeitures, judgments, legal fees, including reasonable attorneys' fees actually incurred, and any other costs and expenses heretofore or hereafter resulting from, arising out of, relating to, or in connection with (i) a breach of any representation, warranty or obligation of Seller contained in or made pursuant to this Contract or the Guide, or (ii) any act or omission by Seller under this Contract or the Guide, or (iii) any claim, demand, defense or assertion against or involving Company, including without limitation, from Company's assignee or transferee, with respect to any mortgage loan, based on or grounded upon, or resulting from any such breach by Seller or a breach of any representation, warranty or obligation made by Company in reliance upon any representation, warranty or obligation made or undertaken by Seller contained in or pursuant to this Contract or the Guide. . . .

15. On October 1, 1996, INDYMAC entered into a Seller Contract with SKYLINE ("Skyline Agreement"). A true and correct copy of the Skyline Agreement is attached as Exhibit 2.

16. The Skyline Agreement sets forth terms and conditions pursuant to which INDYMAC would purchase and/or fund loans processed, packaged and submitted by SKYLINE. The Skyline Agreement also provides that the loans must satisfy specified criteria in accordance with INDYMAC's underwriting requirements, all as more fully set forth in the Skyline Agreement.

17. The Skyline Agreement provides the following:

The Seller desires to do one or more of the following: (1) sell mortgage loans to Company, (2) service mortgage loans for Company, and/or (3) submit mortgage loans to Company for table funding, and Company desires to do one or more of the following: (1) purchase mortgage loans from Seller, (2) have Seller service mortgage loans for Company, and/or (3) fund mortgage loans submitted by Seller to Company for table funding, in each case pursuant to the terms of this Contract, the IndyMac and Affiliates Seller Guide, as amended, supplemented or otherwise modified from time to time (the "Guide") and

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

any master commitments entered into between Seller and Company, pursuant to the terms of the Guide.

\*\*\*

4.    Seller Duties.

Seller shall diligently perform all duties incident to the sale, table funding and/or servicing, as applicable, of all mortgage loans which may be sold by Seller to, delivered by Seller for table funding by, or serviced by Seller for, Company from time to time and such other mortgage loans as Company and Seller may mutually agree upon. In performance of such duties, Seller shall comply with all of the applicable provisions of the Guide and with all other reasonable requirements and instructions of Company. . . .

18.    The Skyline Agreement provides the following with regard to indemnification:

16.    Indemnification by Seller.

Seller shall promptly indemnify Company from and hold Company harmless against all losses, damages, penalties, fines, forfeitures, legal fees, and related costs, judgments, and any other costs, fees, and expenses heretofore or hereafter resulting from or arising out of a breach of any representations and warranty or obligation of Seller contained in or made pursuant to this contract or the Guide or from any act or omission by the Seller under this Contract or the Guide, or from any claim, demand, defense, or assertion against or involving Company, including without limitation, from Company's assignee or transferee with respect to any mortgage loan, based o or grounded upon, or resulting from such breach or breach of any representation, warranty or obligation made by Company in reliance upon any representation, warranty or obligation made or undertaken by Seller contained in or pursuant to this Contract or the Guide. . . .

19.    INDYMAC's Lending Guide, and the terms thereof, is incorporated by reference into the Platinum Agreement and the Skyline Agreement. A copy of the Guide was in the possession of, or available to, PLATINUM CAPITAL and SKYLINE at all relevant times.

20.    The Platinum Agreement states:

Incorporation of Guide by Reference.  SELLER ACKNOWLEDGES THAT IT HAS READ THE GUIDE PRIOR TO ENTERING INTO THIS CONTRACT and has the ability to sell, service and/or facilitate (as the case

may be) the funding of mortgage loans in accordance with the Guide. Seller hereby agrees to perform all of the obligations of a seller, and to comply with the terms, conditions, procedures and requirements set forth in the Guide, all of the terms and conditions of which are incorporated herein by reference and made a part of this Contract.

21.    The Skyline Agreement provides:

1.    Incorporation of Guide by Reference.

The Seller acknowledges that it has received and read the Guide and has the ability to sell, facilitate the table funding of, and/or service (as the case may be) mortgage loans in accordance with the Guide. All provisions of the Guide are incorporated herein by reference and made part of this Contract and shall be binding upon the parties. All Terms used herein shall have the respective meanings given such terms in the Guide.

22.    Unless otherwise noted, the terms "Seller" and "Customer" and "Seller/Customer" may be used interchangeably below, and all three terms shall refer to PLATINUM CAPITAL and SKYLINE.

23.    The Guide provides that the Customer/Seller represents and warrants to INDYMAC as follows with respect to each loan delivered to INDYMAC as of the date of purchase of the loan by INDYMAC:

**1206.02  General Loan Eligibility**

Following are the general loan eligibility representations and warranties:

(a)    The Loan conforms in all respects to the requirements of this Guide, and the information set forth in each Loan Document delivered by the Seller conforms in all respects to the requirements of the Guide and is true, complete and accurate, and no material fact about the Loan has been misstated or omitted.

(b)    There are no circumstances or conditions with respect to the Security Instrument, the Subject Property, the Mortgagor, the Mortgagor's credit standing or the origination of the Loan that could cause private institutional investors who invest in loans with similar loan program parameters to regard the Loan as an unacceptable investment, cause the Loan to become Delinquent or adversely affect the value or marketability of the Loan.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL. (213) 688-0080 • FAX (213) 622-7594

781498.1 5662.089

COMPLAINT FOR BREACH OF CONTRACT; NEGLIGENT MISREPRESENTATION; FRAUD

* * *

(d)    The Seller has good title to and is the sole owner and holder of the Loan and has free and marketable title thereto, free and clear of any and all liens, pledges, charges or security interests of any nature and has full right and authority, subject to no interest or participation of, or agreement with any other party, to sell and assign the Loan to the Company. The transfer and assignment of the Loan by Seller validly transfers such Loan to the Company free and clear of any liens, pledges, charges or security interest or other encumbrances.

(Guide, § 1206.02, Representations and Warranties Regarding loans.)

24.    Section 1217.01 of the Guide states as follows:

**1217.01 Credit and Property Underwriting**

The Seller shall be responsible for all credit and property underwriting regardless of whether the information was documented by the Seller, any organization related to the Seller, or any organization selected by the Seller. This includes, but is not limited to, appraisals, Borrower credit information and all other documents used to assess each Loan. The Seller represents and warrants that all Loans sold to IndyMac have been prudently originated and underwritten in accordance with IndyMac's origination and underwriting guidelines set forth in this Guide. In addition, Seller represents and warrants that all of the information contained in the Loan Documents concerning the Mortgagor is true, complete and accurate . . . .

25.    The Seller Contract provides in relevant part the following with regard to representations and warranties:

14.    <u>Warranties, Representations and Obligation.</u> Seller reaffirms that the representations and warranties stated in the Guide are true and correct and agrees to undertake all of the obligations stated in the Guide upon the execution of this Contract and upon the sale of each mortgage loan to Company . . .

26.    The FDIC is informed and believes that PLATINUM CAPITAL and SKYLINE did business in Idaho. The FDIC is informed and believes and thereon alleges that GREEN operated and/or worked for PLATINUM CAPITAL and SKYLINE. PLATINUM CAPITAL and SKYLINE through their

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1  agent/employee GREEN solicited four borrowers and processed, packaged and

2  submitted the loans to INDYMAC that form the subject matter of this Complaint.

3          27.    FDIC/INDYMAC has performed all of its obligations to

4  PLATINUM CAPITAL and SKYLINE under and in accordance with the terms of

5  their respective agreement and the Guide, except any obligations FDIC/INDYMAC

6  have been prevented or excused from performing by the acts and breaches of

7  PLATINUM CAPITAL and SKYLINE.

8          28.    The loans submitted by or on behalf of PLATINUM CAPITAL

9  and SKYLINE to INDYMAC failed to meet the documentation requirements of, or

10 otherwise failed to comply with, the terms and conditions of the Platinum

11 Agreement, Skyline Agreement and the Guide governing the submission of the

12 loans.  The failures constitute violations of the representations and warranties by

13 PLATINUM CAPITAL and SKYLINE to INDYMAC in the parties' respective

14 Agreements and the Guide, as more fully set forth below.

15         29.    FDIC/INDYMAC demanded that PLATINUM CAPITAL and

16 SKYLINE perform their indemnification obligations under the terms of the

17 respective Agreements and the Guide.  PLATINUM CAPITAL and SKYLINE have

18 failed and refused to perform those obligations, despite having agreed and

19 committed to do so as a condition of INDYMAC's willingness to originate the loans

20 submitted.

21         30.    The respective Agreements and the Guide provide that in the

22 event of any lawsuits related to the Agreements, the prevailing party shall be entitled

23 to recover reasonable attorneys' fees and costs.

24        **FIRST CLAIM FOR BREACH OF CONTRACT**

25        **As To RPM MORTGAGE and PLATINUM CAPITAL**

26         31.    The FDIC realleges and incorporates hereby by this reference

27 paragraphs 1 through 30 inclusive, of this Complaint.

28 / / /

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

781498.1 5662.089

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

32.     On or about January 24, 2007, pursuant to the provisions contained in the Platinum Agreement and subject to the terms and conditions of the Guide, PLATINUM CAPITAL submitted to INDYMAC a Construction to Permanent Residence Loan to Mark and Genevieve Baltyn (Loan No. 1011257001) in the principal amount of $2,080,000, which loan was secured by property located at 6604 Jack Rabbit Trail, Harrison, Idaho (the "BALTYN LOAN").

33.     In submitting the BALTYN LOAN to INDYMAC, PLATINUM CAPITAL breached the representations and warranties contained in the Platinum Agreement and the Guide in that the borrower did not intend to occupy the property, but instead purchased the property as part of an investment group.  Specifically, the borrower entered into agreement with Sonoran Dream Dev and Sierra Builders (the contractor) where each would own 1/3 interest in the property, but the borrower's name would be used to secure the loan.

34.     FDIC/INDYMAC has performed all of its obligations to PLATINUM CAPITAL under and in accordance with the terms of the Platinum Agreement, except any obligations FDIC/INDYMAC have been prevented or excused from performing by the acts and breaches of PLATINUM CAPITAL.

35.     As a proximate result of PLATINUM CAPITAL's breach of contract, FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial, but presently believed to be in excess of $600,000, plus interest, costs, and attorneys' fees.

## SECOND CLAIM FOR BREACH OF CONTRACT
## As To RPM MORTGAGE and PLATINUM CAPITAL

36.     The FDIC realleges and incorporates hereby by this reference paragraphs 1 through 35 inclusive, of this Complaint.

37.     On or about January 27, 2007 pursuant to the provisions contained in the Platinum Agreement and subject to the terms and conditions of the Guide, PLATINUM CAPITAL submitted to INDYMAC a Construction to

1 Permanent Residence loan to Bradly and Marnie Tinker (Loan No. 1010915617) in

2 the principal amount of $2,065,971, which loan was secured by property located at

3 5427 E. Jackleg Trail, Harrison, Idaho (the "TINKER LOAN").

4      38.   In submitting the TINKER LOAN to INDYMAC, PLATINUM

5 CAPITAL breached the representations and warranties contained in the Platinum

6 Agreement and the Guide in that the (1) borrower did not intend to occupy the

7 property, but instead bought it as part of an investment group (the borrower entered

8 into agreement with Ronald Blemaster and Sierra Builders (the contractor) where

9 each would own 1/3 interest in the property, but the borrower's name would be used

10 to secure the loan); (2) the borrower's credit was misrepresented; and (3) the

11 borrower's employment was misrepresented.

12      39.   FDIC/INDYMAC has performed all of its obligations to

13 PLATINUM CAPITAL under and in accordance with the terms of the Platinum

14 Agreement and the Guide, except any obligations FDIC/INDYMAC have been

15 prevented or excused from performing by the acts and breaches of PLATINUM

16 CAPITAL.

17      40.   As a proximate result of PLATINUM CAPITAL's breach of

18 contract, FDIC/INDYMAC has been damaged in an amount to be proven at the time

19 of trial, but presently believed to be in excess of $600,000, plus interest, costs, and

20 attorneys' fees.

21     **THIRD CLAIM FOR BREACH OF CONTRACT**

22     **As To RPM MORTGAGE and PLATINUM CAPITAL**

23      41.   The FDIC realleges and incorporates hereby by this reference

24 paragraphs 1 through 40 inclusive, of this Complaint.

25      42.   On or about March 27, 2007, pursuant to the provisions

26 contained in the Platinum Agreement and subject to the terms and conditions of the

27 Guide, PLATINUM CAPITAL submitted to INDYMAC a Construction to

28 Permanent Residence Loan to Mark E. Michalak (Loan No. 1011329982) in the

*Left margin:*
ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1  principal amount of $2,076,738, which loan was secured by property located at 5427

2  E. Jackleg Trail, Harrison, Idaho (the "MICHALAK LOAN").

3        43.    In submitting the MICHALAK LOAN to INDYMAC,

4  PLATINUM CAPITAL breached the representations and warranties contained in

5  the Platinum Agreement and the Guide in that the borrower's credit was

6  misrepresented.

7        44.    FDIC/INDYMAC has performed all of its obligations to

8  PLATINUM CAPITAL under and in accordance with the terms of the Platinum

9  Agreement and the Guide, except any obligations FDIC/INDYMAC have been

10  prevented or excused from performing by the acts and breaches of PLATINUM

11  CAPITAL.

12        45.    As a proximate result of PLATINUM CAPITAL's breach of

13  contract, FDIC/INDYMAC has been damaged in an amount to be proven at the time

14  of trial, but presently believed to be in excess of $600,000, plus interest, costs, and

15  attorneys' fees.

16        **FOURTH CLAIM FOR BREACH OF CONTRACT**

17                **As To SKYLINE**

18        46.    INDYMAC realleges and incorporates hereby by this reference

19  paragraphs 1 through 45 inclusive, of this Complaint.

20        47.    On or about October 22, 2007, pursuant to the provisions

21  contained in the Skyline Agreement and subject to the terms and conditions of the

22  Guide, SKYLINE submitted to INDYMAC a Construction to Permanent Residence

23  Loan to Douglas and Holly Jackson (Loan No. 1011356415) in the principal amount

24  of $2,025,000, which loan was secured by property located at 7767 Gozzer Road,

25  Harrison, Idaho (the "JACKSON LOAN").

26        48.    In submitting the JACKSON LOAN to INDYMAC, SKYLINE

27  breached the representations and warranties contained in the Agreement and the

28  Guide in that (1) the borrower's income was misrepresented; (2) the transaction was

781498.1 5662.089

1  misrepresented; and (3) the borrower's occupancy was misrepresented.  Specifically,

2  defendant GREEN and her husband, Timothy Green, owned the property through

3  their company, Nestaway, LLC.  Nestaway purchased the property for $585,000 in

4  September 2006 and sold it to the borrowers in June 2007 for $900,000.  GREEN

5  referred the loan to SKYLINE.  GREEN and the Jacksons had an investment deal in

6  which they agreed to split the proceeds from the sale of the property after

7  construction was complete.

8       49.  FDIC/INDYMAC has performed all of its obligations to

9  SKYLINE under and in accordance with the terms of the Skyline Agreement and

10  the Guide, except any obligations FDIC/INDYMAC have been prevented or

11  excused from performing by the acts and breaches of SKYLINE.

12       50.  As a proximate result of SKYLINE's breach of contract,

13  FDIC/INDYMAC has been damaged in an amount to be proven at the time of trial,

14  but presently believed to be in excess of $600,000, plus interest, costs, and

15  attorneys' fees.

16  ### FIFTH CLAIM FOR SPECIFIC PERFORMANCE
17  ### As To RPM MORTGAGE, PLATINUM CAPITAL and SKYLINE

18       51.  The FDIC realleges and incorporates hereby by this reference

19  paragraphs 1 through 50, inclusive, of this Complaint.

20       52.  The terms and provisions of the Platinum Agreement, Skyline

21  Agreement and the Guide are just and reasonable as to FDIC/INDYMAC and

22  defendants.  The respective obligations of FDIC/INDYMAC and defendants under

23  the terms of the respective Agreements are supported by fair and adequate

24  consideration.  FDIC/INDYMAC alleges this specific performance cause of action

25  as an alternative remedy to its causes of action at law, and, for the purpose of

26  preserving its right to pursue alternative remedies, alleges that it has no adequate

27  remedy at law.

28  / / /

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1    53.    The FDIC is entitled to a judicial decree of specific performance

2  commanding PLATINUM CAPITAL and SKYLINE to perform their indemnity

3  obligations under their respective Agreements and the Guide to indemnify

4  FDIC/INDYMAC for the losses incurred in connection with the BALTYN,

5  TINKER, MICHALAK, and JACKSON LOANS, in an amount to be proven at the

6  time of trial.  Under the terms of their respective Agreements, defendants agreed to

7  pay attorneys' fees in the event suit is commenced to enforce the Agreements.

8  Therefore, the FDIC requests that the court award the FDIC its attorneys' fees in

9  this matter as part of any award or judgment, plus prejudgment interest as allowed

10  by law.

11              **SIXTH CLAIM FOR PROFESSIONAL NEGLIGENCE**

12        **As To RPM MORTGAGE, PLATINUM CAPITAL and SKYLINE**

13    54.    The FDIC realleges and incorporates hereby by this reference

14  paragraphs 1 through 53, inclusive, of this Complaint.

15    55.    As a mortgage broker with a pecuniary interest in the

16  transactions whereby INDYMAC purchased the BALTYN, TINKER, MICHALAK,

17  and JACKSON LOANS, defendants owed INDYMAC a duty to act in accordance

18  with the law and in accordance with custom, practices and standards of conduct of a

19  mortgage broker professional prevailing in the mortgage industry.  As part of this

20  duty, PLATINUM CAPITAL and SKYLINE owed INDYMAC a duty that cannot

21  be delegated to third parties or independent contractors.  As part of this duty,

22  defendants owed INDYMAC a duty to use reasonable care under the circumstances

23  to refrain from supplying false information for the guidance of INDYMAC in

24  purchasing the BALTYN, TINKER, MICHALAK and JACKSON LOANS.

25  Defendants, and each of them, knew that the information they were providing to

26  INDYMAC would be used and relied upon by INDYMAC in deciding to fund the

27  BALTYN, TINKER, MICHALAK and JACKSON LOANS.

28  / / /

ANDERSON, MCPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

781498.1 5662.089

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

56.   In breach of their duty, PLATINUM CAPITAL and SKYLINE negligently provided false information to INDYMAC concerning the transactions as well as borrowers' occupancy, income, employment, and/or credit as set forth above.

57.   In breach of their duty, defendants, and each of them, negligently failed to disclose material facts to INDYMAC as set forth above.

58.   INDYMAC relied upon PLATINUM CAPITAL and SKYLINE to conduct their businesses in accordance with the duty of care implied by the law and the custom of the mortgage industry and believed that the information submitted by defendants, and each of them, was true and had been reviewed in accordance with the Guide and other standards prevalent in the mortgage industry.

59.   FDIC/INDYMAC has been damaged because it relied upon the proper performance by PLATINUM CAPITAL and SKYLINE of their professional duties as mortgage brokers in making the decision to make the BALTYN, TINKER, MICHALAK and JACKSON LOANS.  FDIC/INDYMAC's damages are presently believed to be in excess of $2,400,000 plus interest, costs, and attorneys' fees.

### SEVENTH CLAIM FOR FRAUD
### As To STEPHANIE GREEN

60.   The FDIC realleges and incorporates hereby by this reference paragraphs 1 through 59, inclusive, of this Complaint.

61.   The FDIC is informed and believes and thereon alleges that PLATINUM CAPITAL and SKYLINE operated in Idaho, amongst other places. GREEN, a resident of California and a licensed real estate agent, was an agent and/or employee of PLATINUM CAPITAL and SKYLINE.

62.   The FDIC is further informed and believes that GREEN and her husband are the owners and sole shareholders of a business known as Nestaway, LLC.  Nestaway, LLC was the owner of the real property located at 7767 Gozzer Road, Harrison, Idaho (the "Gozzer Road Property").  Nestaway, LLC purchased the Gozzer Road Property on or about September 12, 2006 for $585,000.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

1    63.    The FDIC is informed and believes and thereon alleges that, in

2  June 2007, GREEN solicited Douglas Jackson to enter into a real estate scam in

3  which they agreed as follows:  Douglas Jackson and his wife, Holly Jackson, would

4  purchase the Gozzer Road Property from Nestaway, LLC for $900,000 with a loan

5  GREEN negotiated, processed and brokered through SKYLINE and, after the

6  construction was completed, GREEN and Douglas Jackson would sell the property

7  and share the profits.

8    64.    On or about October 27, 2007, in furtherance of GREEN's

9  agreement with Douglas Jackson and pursuant to the provisions contained in the

10  Skyline Agreement and subject to the terms and conditions of the Guide, GREEN

11  through SKYLINE processed, packaged and submitted the JACKSON LOAN to

12  INDYMAC which fraudulently misrepresented the Jacksons' intent to occupy the

13  property and fraudulently concealed GREEN's relationship with the Jacksons and

14  Nestaway LLC and her ownership interest in the property.

15    65.    INDYMAC reasonably relied on the information contained in the

16  loan package submitted by GREEN/SKYLINE in conjunction with the JACKSON

17  LOAN in deciding to fund the loan.

18    66.    The FDIC is informed and believes and thereon alleges the

19  information in the loan package was false and/or failed to disclose material

20  information.  Specifically, with the intent to defraud INDYMAC, GREEN prepared

21  the loan documents which (1) misrepresented Douglas and Holly Jackson's intent to

22  occupy the premises which was being constructed at the Gozzer Road Property; and

23  (2) concealed the fact that she held an ownership interest in the Gozzer Road

24  Property.

25    67.    The FDIC is informed and believes and thereon alleges that as a

26  result of the fraudulent acts, FDIC/INDYMAC has suffered damages in an amount

27  of no less than $2,400,000 subject to proof at trial plus attorneys' fees, costs and

28  interest.

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

68.     In committing the aforementioned despicable acts, GREEN acted with oppression, fraud or malice and with the intent to defraud FDIC/INDYMAC, which justifies an award of punitive damages in an amount according to proof at the time of trial.

## EIGHTH CLAIM FOR NEGLIGENT MISREPRESENTATION
### As To STEPHANIE GREEN

69.     The FDIC realleges and incorporates hereby by this reference paragraphs 1 through 68, inclusive, of this Complaint.

70.     The FDIC is informed and believes and thereon alleges that PLATINUM CAPITAL and SKYLINE did business in Idaho, amongst other places. GREEN, a resident of California and a licensed real estate agent, was an agent and/or employee of PLATINUM CAPITAL and SKYLINE.

71.     The FDIC is further informed and believes that GREEN and her husband are the owners and sole shareholders of a business known as Nestaway, LLC. Nestaway, LLC was the owner of the real property located at 7767 Gozzer Road, Harrison, Idaho ("Gozzer Road Property"). Nestaway, LLC purchased the Gozzer Road Property on or about September 12, 2006 for $585,000.

72.     The FDIC is informed and believes and thereon alleges that, in June 2007, GREEN solicited Douglas Jackson to enter into a real estate scam in which they agreed as follows: Douglas Jackson and his wife, Holly Jackson, would purchase the Gozzer Road Property from Nestaway, LLC for $900,000 with a loan she would broker through SKYLINE and, after the house was constructed, GREEN and Douglas Jackson would sell the property and share the profits.

73.     On or about October 22, 2007, in furtherance of GREEN's agreement with Douglas Jackson and pursuant to the provisions contained in the Skyline Agreement and subject to the terms and conditions of the Guide, GREEN, through SKYLINE, processed, packaged and submitted the JACKSON LOAN to INDYMAC which negligently misrepresented the Jacksons' intent to occupy the

COMPLAINT FOR BREACH OF CONTRACT: NEGLIGENT MISREPRESENTATION; FRAUD

781498.1 5662.089

1  property and fraudulently concealed GREEN's relationship with the Jacksons and

2  Nestaway LLC and her ownership interest in the property.

3        74.    INDYMAC reasonably relied on the information contained in the

4  loan package submitted by SKYLINE in conjunction with the JACKSON LOAN in

5  deciding to fund the loan.

6        75.    The FDIC is informed and believes and thereon alleges the

7  information in the loan package was false and/or negligently failed to disclose

8  material information.  Specifically, the FDIC is informed and believes that GREEN

9  negligently prepared the loan documents which (1) misrepresented Douglas and

10 Holly Jackson's intent to occupy the premises which was being constructed at the

11 Gozzer Road Property; and (2) failed to disclose the fact that she held an ownership

12 interest in the Gozzer Road Property.

13       76.    The FDIC is informed and believes and thereon alleges that as a

14 result of the misrepresentations, FDIC/INDYMAC has suffered damages in an

15 amount of no less than $2,400,000 subject to proof at trial plus attorneys' fees, costs

16 and interest.

17                        **PRAYER FOR RELIEF**

18       **WHEREFORE,** the FDIC prays for judgment against defendants, and

19 each of them, as follows:

20 **FIRST, SECOND AND THIRD CLAIMS FOR RELIEF:**

21       1.    For general, compensatory, and consequential damages,

22 according to proof at trial, including, without limitation, damages for RPM

23 MORTGAGE and PLATINUM CAPITAL's failure to indemnify FDIC/INDYMAC

24 for its losses, as set forth above, in excess of $1,800,000, plus interest, costs and

25 attorneys' fees;

26 **FOURTH CLAIM FOR RELIEF:**

27       2.    For general, compensatory, and consequential damages,

28 according to proof at trial, including, without limitation, damages for SKYLINE's

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

COMPLAINT FOR BREACH OF CONTRACT; NEGLIGENT MISREPRESENTATION; FRAUD

1 failure to indemnify FDIC/INDYMAC for its losses, as set forth above, in excess of

2 $600,000, plus interest, costs and attorney's fees;

3 **FIFTH CLAIM FOR RELIEF:**

4       3.     That the court enter a decree of specific performance

5 commanding RPM MORTGAGE, PLATINUM CAPITAL and SKYLINE to

6 perform their indemnification obligations under the respective Agreements and to

7 indemnify FDIC/INDYMAC for the losses incurred in connection with the

8 respective loans;

9       4.     All damages incurred as a result of RPM MORTGAGE,

10 PLATINUM CAPITAL and SKYLINE's failure to perform under the respective

11 Agreements and the Guide;

12 **SIXTH CLAIM FOR RELIEF:**

13       5.     For general, compensatory, and consequential damages,

14 according to proof at trial, including, without limitation, damages against RPM

15 MORTGAGE, PLATINUM CAPITAL and SKYLINE for their professional

16 negligence;

17 **SEVENTH CLAIM FOR RELIEF:**

18       6.     For general, compensatory, and consequential damages,

19 according to proof at trial for GREEN's fraudulent conduct;

20       7.     For punitive and exemplary damages;

21 **SEVENTH CLAIM FOR RELIEF:**

22       8.     For general, compensatory, and consequential damages,

23 according to proof at trial for GREEN's negligent misrepresentations;

24 **ALL CLAIMS FOR RELIEF:**

25       9.     For its costs of suit incurred herein;

26      10.    For its reasonable attorneys' fees as allowed by law;

27      11.    For prejudgment interest at the legal rate allowable; and

28 / / /

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

COMPLAINT FOR BREACH OF CONTRACT; NEGLIGENT MISREPRESENTATION; FRAUD

1           12.    For such other and further relief as the court deems just and

2 proper.

3

4 DATED: March 9, 2010        ANDERSON, McPHARLIN & CONNERS LLP

5

6                           By:

7                              Vanessa H. Widener

8                            Jennifer S. Muse
                           Attorneys for Plaintiff FEDERAL DEPOSIT

9                            INSURANCE CORPORATION as Receiver for
                           INDYMAC BANK, F.S.B.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANDERSON, McPHARLIN & CONNERS LLP
LAWYERS
444 SOUTH FLOWER STREET, THIRTY-FIRST FLOOR
LOS ANGELES, CALIFORNIA 90071-2901
TEL (213) 688-0080 • FAX (213) 622-7594

781498.1 5662.089

COMPLAINT FOR BREACH OF CONTRACT; NEGLIGENT MISREPRESENTATION; FRAUD

**EXHIBIT 1**

#2557

## *Seller Contract and e-MITS™ User Agreement*

This Seller Contract and e-MITS™ User Agreement (as amended, supplemented or otherwise modified from time to time, the "Contract") is entered into this _20_ day of _MARCH_ , 19 _2000_ by and among INDYMAC, INC. ("IndyMac"), its affiliate INDYMAC MORTGAGE HOLDINGS, INC. dba "Construction Lending Corporation of America" ("IndyMac REIT") (IndyMac and IndyMac REIT are collectively referred to herein as the "Company"), and _Platinum     Capital,_ a _California Corporation_ ("Seller").

Subject to all applicable legal and regulatory requirements, Seller desires to do one or more of the following: (1) sell mortgage loans to Company, (2) service mortgage loans for Company, and/or (3) submit mortgage loans to Company for table funding, and Company desires to do one or more of the following: (1) purchase mortgage loans from Seller, (2) have Seller service mortgage loans for the Company, and/or (3) fund mortgage loans submitted by Seller to Company for table funding, in each case pursuant to the terms of this Contract, the IndyMac Seller Guide, as amended, supplemented or otherwise modified from time to time (the "Seller Guide"), and the e-MITS™ User Guide (the "e-MITS™ Guide") (the Seller Guide and the e-MITS™ Guide are collectively referred to as the "Guide") and any master commitments entered into between Seller and Company. Seller desires to undertake the aforementioned tasks using the IndyMac e-MITS™ system as more fully described herein and subject to the terms and conditions herein. All terms used and not otherwise defined herein shall have the meanings given such terms in the Guide.

NOW, THEREFORE, in consideration of the premises set forth above and the terms, conditions and agreements set forth below, Company and Seller hereby agree as follows:

1.    **Seller's Duties.** Seller shall diligently perform all duties incident to the sale, servicing and/or table funding, as applicable, of all mortgage loans which may be sold by Seller to, serviced by Seller for, and/or delivered by Seller for table-funding by Company from time to time and such other mortgage loans as Company and Seller may mutually agree upon. In the performance of such duties, Seller shall comply with all of the applicable provisions of the Guide and with all other reasonable requirements and instructions of Company. Seller shall perform all such duties at its sole expense except as otherwise expressly provided in the Guide. Seller agrees to service (if servicing is retained) each of such mortgage loans continuously beginning with the purchase date for such mortgage loans, or the date of designation of Seller as replacement servicer for mortgage loans previously purchased by Company from another Seller, until all interest and principal on each mortgage loan has been paid in full, the mortgage loan has been liquidated as provided in the Guide, or such servicing duties are terminated by Company. Seller shall create, maintain and transmit all mortgage loan papers and documents including permanent mortgage loan account records in accordance with the Guide. Seller shall promptly notify Company in writing of any activity or action, either internal or external, which could potentially affect adversely the terms of any mortgage loan serviced hereunder or the ability of Seller to service any mortgage loan for any investor, including Company.

2.    **Incorporation of Guide by Reference.** SELLER ACKNOWLEDGES THAT IT HAS READ THE GUIDE PRIOR TO ENTERING INTO THIS CONTRACT and has the ability to sell, service and/or facilitate (as the case may be) the table funding of mortgage loans in accordance with the Guide. Seller hereby agrees to perform all of the obligations of a seller, and to comply with the terms, conditions, procedures and requirements set forth in the Guide, all of the terms and conditions of which are incorporated herein by reference and made a part of this Contract.

3.    **Term of Contract; Termination.**

3.1    **Term.** The term of this Contract will commence on the date first set forth above. Each party reserves the right to terminate this Contract at any time for any reason in its sole discretion upon ninety (90) days' written notice to the other party. In addition to the foregoing, Company will have the right to terminate this Contract effective immediately upon notice to Seller in the event of any breach by Seller of this Contract, the Guide or any other agreement between Company and Seller related to the System or Seller's relationship with Company.

EXHIBIT ____1____
PAGE ____21____

3.2     Obligations of Seller upon Termination. Upon termination of this Contract, Seller shall (i) cease using the System and Software (as defined in Paragraph 4.1, below) immediately, and (ii) deliver to Company or (if so directed by Company) destroy any copies of the Software in Seller's possession and any other materials provided by Company to Seller pursuant hereto in its possession or under its control (including the Guide). If Company shall so direct, Seller shall furnish to Company an affidavit signed by an officer of Seller certifying that, to the best of his or her knowledge, the delivery or destruction referenced in (ii) and (iii) above have been fully effected. The parties' rights and obligations under Sections 1, 2, 3.2, 4.2, 5 through 12, inclusive, 15, and 16 shall survive any termination of any license or rights under this Contract.

4.      Use of IndyMac e-MITS ™.

4.1     System and Software. Subject to the terms and conditions of this Contract, IndyMac grants to Seller the non-exclusive, non-assignable right to use, during the term of this Contract (i) the electronic mortgage information transaction system owned by IndyMac and known as IndyMac e-MITS ™ (the "System"), and (ii) the System software, any updates and enhancements of such software which are made available by Company to Seller, and all code and controls contained in the Web Site, as well as any subsequent code which may be written in any programming language (collectively, the "Software"), without change, along with any reports or other printouts generated by the Software in the course of its normal operation ("Output"), any documentation related to the Software, and any copies of the foregoing which Seller is permitted to make pursuant to the terms of this Contract and the Guide. Seller may only access the System using the Software via the internet through the e-MITS ™ Web Site (the "Web Site"), and will cause to be entered into the System only data regarding existing mortgage loans sold to Company, potential mortgage loans for which an application or an inquiry has been made to Seller by a potential borrower, and mortgage loans presented to Seller by a third party originator ("TPO"), subject to any limitations set forth in Guide. Seller's use of the System is subject to all provisions of this Contract and all instructions as may be communicated by Company from time to time in writing, including, without limitation, restrictions on the use of the System. Seller shall not: (a) decompile, disassemble, reverse engineer, or otherwise determine or attempt to determine source code for the executable code of the Software or any information, products or services obtained from the Web Site (collectively, the "Products"), (b) rent, lease, transfer, sell, publish, license, distribute or otherwise transfer any rights to the Products, except to the extent permitted under Section 11; (c) modify, translate, enhance, maintain, or create derivative works based on the Products; (d) except to the extent necessary to use the System for the sole purpose set forth in this Section 4.1, modify, copy, distribute, transmit, display, perform or reproduce the Products; (e) except to the extent otherwise provided in this Contract or consented to by Company in writing, permit any third parties to use the System, either directly or through Seller; (f) use the System for any purpose other than the purpose for which IndyMac has developed the System; or (g) copy, download, or otherwise access the System software except as such operations are performed by the Software in the course of its normal operation.

4.2     System Ownership. Seller acknowledges that it has no ownership or other interest or license in the System or Software, except to the extent of the rights expressly granted herein. Title, ownership rights, and intellectual property rights (including all applicable rights to copyrights, trade secrets, patents, and trademarks) in and to the System and Software and any modifications or enhancements made to the System or Software belong to and will remain with IndyMac.

4.3     Procedures for Seller's Use. Seller hereby agrees that the Web Site shall be used by Seller's authorized employees only. Company shall provide Seller access to the System as set forth in Section 1000 of the e-MITS ™ Guide. Seller shall be solely responsible for (i) preventing unauthorized use of the identification numbers and passwords, (ii) unauthorized use of the System in connection with Seller's identification numbers and passwords, and (iii) controlling access to the System and implementing effective security measures. Company shall have no liability with respect to any such unauthorized use. Seller shall list Seller's authorized users as set forth in Section 1000 of the e-MITS Guide, and ensure that each individual identification number and password is used only by the person identified in the System. Seller will permit Company to audit or review Seller's controls and procedures relating to the access and security of the System.

4.4     Seller's Obligation to Review System Input Daily. Seller acknowledges and agrees that it will be solely responsible for reviewing on a daily basis the data it inputs into the System and for disputing inaccurate or erroneous data, and the actions Company takes based upon such inaccurate or erroneous data, within one business day of the date on which such data was input into the System by Seller. Seller agrees that Company will have no liability

EXHIBIT _____ /
PAGE _____ 2 2

03-20-00   14:09   From-INDEPENDANT NAT'L MTG                   6266858279                T-869   P.04/13   F-777

whatsoever arising out of or related to inaccurate or erroneous data which is not disputed within the time period set forth above.

4.5     Seller's Obligation to Submit Loans Through the System. Seller acknowledges and agrees that Seller must submit all mortgage loans to Company through the System to the extent the System supports the applicable loan program and/or product. The loan programs and/or products supported by the System may be expanded or reduced from time to time and IndyMac will notify Seller of the new loan programs and/or products supported by the System as they change. All rate locks shall have the same force and effect as a rate lock received by IndyMac's Rate Lock Desk via telephone or facsimile in accordance with the applicable terms set forth in this Contract and the Guide. Seller's Master Commitment price breaks will not apply to rate locks issued through the System. Seller acknowledges that all rate locks are subject to changes if, upon review of the Data (as defined below), Company determines, in its sole and absolute discretion, that the Data is incomplete or is not supported by the loan documents, or any other documents that Company receives from Seller or otherwise obtains in connection with the Data verification process.

4.6     Fees. Seller will not be assessed a fee for the use of the System; provided, however, that Company, in its sole and absolute discretion, reserves the right to charge a fee for use of the System at a future date. In the event that Company commences charging a fee for use of the System, Company shall provide Seller thirty (30) days' prior written notice of such fee. Seller shall have the right to terminate this Contract upon receipt of Company's notice regarding the charging of such fee.

5.     Warranties, Representations and Obligation. Seller reaffirms that the representations and warranties stated in the Guide are true and correct and agrees to undertake all of the obligations stated in the Guide upon the execution of this Contract and upon the sale of each mortgage loan to Company on behalf of Company, serviced by Seller and/or table-funded by Company (as the case may be), unless expressly waived in writing by Company. All representations and warranties made, and obligations undertaken, by Seller shall survive (i) any investigation made by or on behalf of Company, its assignees or designees, (ii) any liquidation of the mortgage loans, (iii) any purchase or funding of the mortgage loans by Company, its assignees or designees, (iv) the subsequent transfer of the mortgage loans and/or the servicing rights incident to the mortgage loans to any third party, (v) any suspension or termination of Seller's privileges under this Contract, and (vi) the bankruptcy or insolvency of either party, and all such representations and warranties shall inure to the benefit of Company, its assignees or designees, and any transferee of any mortgage loan. Upon specific written request from Company, Seller shall supply evidence that is satisfactory to Company of its compliance with any provision of this Contract and the Guide.

6.     Confidentiality.

6.1     Seller to Maintain Confidentiality; Breach. Seller reaffirms and acknowledges Seller's obligations to maintain the confidentiality of the Confidential Information and Derivative Information, each as defined in the Guide, under the terms and provisions set forth in the Guide. Seller and Company agree that the confidentiality conditions contained in the Guide and this Contract are material terms of this Contract and the Guide, and that any disclosure of any Confidential Information or Derivative Information by Seller or any other person bound by these confidentiality conditions shall constitute a breach by Seller of this Contract and the Guide.

6.2     Remedies. Seller expressly acknowledges that monetary damages alone will not be an adequate remedy for any breach by Seller of the confidentiality provisions contained in the Seller Guide, this Contract, the e-MITS Guide and otherwise, and Seller further acknowledges that the injury to Company due to such breach will outweigh any injury Seller will suffer due to its inability to continue the breaching conduct. Consequently, in addition to any other remedies which Company may have, Company shall be entitled as a matter of right to immediate injunctive relief, in any court of competent jurisdiction, with respect to any actual or threatened breach by Seller of the confidentiality provisions contained in the Seller Guide, this Contract, the e-MITS Guide or otherwise.

6.3     Unauthorized Copying Prohibited. Except to the extent necessary to perform its servicing obligation or other obligations to Company, Seller shall not copy or permit copies to be made of the Confidential Information, Derivative Information, or any portion thereof, without the prior written consent of Company, which consent may be granted or denied in Company's sole and absolute discretion. Seller shall return or turn over to Company any Confidential Information, Derivative Information and copies thereof, including without limitation, hard

03-20-00   14:10   From-INDEPENDENT NATL MTG                6266850270              T-869   P.05/13   F-777

copies and word processing and other computer files, within three (3) business days of Seller's receipt of written demand by Company or immediately upon termination of Seller's eligibility, whichever is earlier.

7.   Data.  Seller agrees that Company will have the right to use and disclose the data entered by Seller onto the System and any other data obtained by Company as provided in Section 1050 of the Seller Guide (collectively, the "Data").

8.   Repurchase Obligations.  Seller shall promptly effectuate any repurchase of a mortgage loan required by Company in accordance with the terms and conditions of the Guide.

9.   Seller's Status as Independent Contractor.  At no time shall Seller represent that it is acting as an agent, partner or joint venturer of Company. Seller shall, at all times, act as an independent contracting party.

10.   Provisions Concerning TPOs.  Company agrees that Seller may use the Software to input into the System data regarding mortgage loans presented to Seller by TPOs, subject to each of the terms and provisions set forth in Section 3000 of the e-MITS User Guide.

11.   Assignment.  This Contract, the Guide, the Software, any rights Seller has to use the System and any related master commitments may not be assigned or transferred (whether voluntarily, involuntarily, by merger, by operation of law or otherwise), in whole or in part, by Seller without the prior written consent of Company. Company may sell, assign, pledge or in any other way transfer, in whole or in part, its rights and obligations under this Contract, the Guide and any related master commitment to any of Company's affiliates without notice to or the consent of Seller. Any other transfer by Company is permitted and effective upon written notice by Company to Seller.

12.   Amendments.  This Contract may not be amended or modified orally, and no provision of this Contract may be waived or amended, except in writing signed by the party against whom enforcement is sought. Such a written waiver or amendment must expressly reference this Contract. However, by its terms the Guide may be amended or supplemented by Company from time to time. Seller agrees to comply with any such amendment(s) to the Guide, effective upon the later of (a) receipt of written notice of such amendment(s), or (b) the effective date specified therein.

13.   Notices.  All notices, requests, demands or other communications that are to be given under this Contract shall be in writing, addressed to the appropriate parties and either sent by certified mail, return receipt requested, postage prepaid, to the addresses below, or by facsimile to the facsimile numbers below. Any such notice, request, demand or other communications shall be deemed effective upon receipt.

If to Company, notice must be sent to the appropriate address or facsimile number specified in the Guide.

If to Seller, notice must be sent to:

PLATINUM CAPITAL
ATTN: Guy Miali
1732 Reynolds Ave.
IRVINE, CA. 92614

14.   Warranties; Limitation of Liability.

14.1   No Warranty.  Company makes no representation or warranty with respect to the System or the Software (except to the extent expressly provided otherwise in Section 5 of this Contract). In addition, Company makes no representation or warranty with respect to any of the data obtained, provided or transmitted by or through the System. EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT, THE SYSTEM, THE SOFTWARE AND ALL DATA ARE BEING PROVIDED TO USER "AS IS" AND ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED (EITHER IN FACT OR BY OPERATION OF LAW), ARE EXPRESSLY EXCLUDED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF ACCURACY, NON-INFRINGEMENT, AND THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR

4

PURPOSE. Seller shall be solely responsible for, and Seller acknowledges that Company shall have no obligation to assist Seller in, (i) setting up the Software on its computer system, (ii) accessing the System via the Web Site or otherwise, and (ii) maintaining connectivity to the System in accordance with instructions provided by Company from time to time. Seller agrees that, notwithstanding any telephone assistance provided by Company under Section 5030 of the e-MITS Guide, Company will have no liability whatsoever arising out of or related to Seller's set-up of the Software, Seller's access to the System or any such telephone assistance. Seller also acknowledges that Seller's access to the System via the Web Site will be through a third party internet service provider ("ISP"), and that Company will have no liability whatsoever arising out of or related to any service provided to Seller by an ISP.

14.2    Liability Limitation. Company will have no liability under this Contract, or related in any respect to the System or Software (including, without limitation, under any other agreement with Seller related to the System) for special, consequential, exemplary, indirect or incidental damages, or for any lost revenues, lost profits or lost data, even if it has been advised of the possibility of such damages. In no event shall Company's total liability to Seller, whether arising out of tort, contract, or other legal theory, exceed $10,000.

15.    Indemnification by Seller. Seller shall promptly indemnify, defend and hold Company from and against all losses, claims, demands, actions or causes of action, liabilities, damages, penalties, fines, forfeitures, judgments, legal fees, including reasonable attorneys' fees actually incurred, and any other costs and expenses heretofore or hereafter resulting from, arising out of, relating to, or in connection with (i) a breach of any representation, warranty or obligation of Seller contained in or made pursuant to this Contract or the Guide, or (ii) any act or omission by Seller under this Contract or the Guide, or (iii) any claim, demand, defense or assertion against or involving Company, including without limitation, from Company's assignee or transferee, with respect to any mortgage loan, based on or grounded upon, or resulting from any such breach by Seller or a breach of any representation, warranty or obligation made by Company in reliance upon any representation, warranty or obligation made or undertaken by Seller contained in or pursuant to this Contract or the Guide, or (iv) any claims based upon Seller's use of the System or Software, including without limitation, claims arising out of Seller's input into the System of inaccurate or erroneous data and any actions taken by Company or Seller based on such data, or (v) Seller's failure to comply with applicable laws and regulations, or (vi) unauthorized use of any identification numbers or passwords with respect to the System, or (vii) actions of TPOs associated with Seller, or (viii) disclosure by Seller or a TPO associated with Seller of the Confidential Information or Derivative Information to a third party, or (ix) actions of TPOs associated with Seller. Seller will not be liable for early payment defaults on subprime loans, provided, however, that Company, may in its sole and absolute discretion, elect to enforce the early payment default provisions for subprime loan contained in the Guide at a future date upon ten days' written notice to Seller. The obligations of Seller under this paragraph shall survive delivery and payment for the mortgage loans and termination of this Contract or the expiration hereof. Attorneys' fees and disbursements incurred in enforcing, or on appeal from, a judgment pursuant hereto shall be recoverable separately from and in addition to any other amount included in such judgment, and this clause is intended to be severable from the other provisions of this Contract and to survive and not be merged into such judgment.

16.    Exclusive Agreement. This Contract, including all documents incorporated by reference herein, constitutes the entire understanding between the parties hereto and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract.

17.    Headings. All section headings contained herein are for convenience only and shall not be construed as part of this Contract.

18.    Enforceability. Any provision of this Contract that is prohibited or unenforceable in any jurisdiction shall as to such jurisdiction be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and to this end, the provisions hereof are severable. In the event any of the terms or provisions contained in this Contract conflict with those contained in the Guide, the terms and provisions of this Contract shall govern.

19.    Governing Law; Waiver of Jury Trial. This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of California, without reference to conflict of laws principles, and the Seller hereby agrees that any court action arising out of this Contract shall be brought in any court of competent jurisdiction within the State of California, County of Los Angeles. SELLER

EXHIBIT  1
PAGE  25

VOLUNTARILY AND KNOWINGLY WAIVES ANY RIGHT IT HAS TO A JURY TRIAL PURSUANT TO ANY
COURT ACTION BROUGHT BY ANY PARTY TO THIS CONTRACT.

20.     Counterparts.  This Contract may be executed in one or more counterparts, each of which shall
constitute an original and all of which shall constitute the same Contract.

IN WITNESS WHEREOF, the duly authorized officers of Seller and Company have executed this
Contract as of the date first above written.

ATTEST:

Corporate Seal
(If none, so state.)

"Seller":

*Platinum Capital*

Name of Seller

By: _____

Name(typed): _____ Gary V. Miali ____

Title: _____ V.P. _____

"Company":

INDYMAC, INC.                                    INDYMAC MORTGAGE HOLDINGS, INC., dba
                                                Construction Lending Corporation of America

By: _____                  By: _____

Name: _____                  Name: _____

Title: _____                  Title: _____

EXHIBIT _____ 1
PAGE _____ 26

PATCH II

## Platinum Capital Group

# CONTRACT

# 2557



- ☐ **Seller Contract**
- ☐ **Customer Contract**
- ☐ **Rider to Seller/Cust Contract**
- ☐ **Serv Rel/ PDU Contract**
- ☐ **Bulk Contract**
- ☐ **Addendum to Seller Contract**
- ☐ **Seller Profit Management Program**

EXHIBIT
PAGE _____ 27

**EXHIBIT 2**

2286

# *Seller Contract*

This Seller Contract (as amended, supplemented or otherwise modified from time to time, the "Contract") is entered into this __1ST__ day of __OCTOBER__ , 19 __96__ , by and between Independent National Mortgage Corporation its successors and assigns (hereafter referred to as "Indy Mac"), including its Subprime Mortgage Division and its Manufactured Housing Division, and its affiliate Independent Lending Corporation, dba Construction Lending Corporation of America ("CLCA") (Indy Mac and CLCA are collectively referred to herein as "Company") and __SKYLINE FINANCIAL CORP. DBA SKYLINE FUNDING__ (hereafter referred to as "Seller") with reference to the following facts:

The Seller desires to do one or more of the following: (1) sell mortgage loans to Company, (2) service mortgage loans for Company, and/or (3) submit mortgage loans to Company for table funding, and Company desires to do one or more of the following: (1) purchase mortgage loans from Seller, (2) have Seller service mortgage loans for Company, and/or (3) fund mortgage loans submitted by Seller to Company for table funding, in each case pursuant to the terms of this Contract, the Indy Mac and Affiliates Seller Guide, as amended, supplemented or otherwise modified from time to time (the "Guide") and any master commitments entered into between Seller and Company, pursuant to the terms of the Guide.

NOW, THEREFORE, in consideration of the premises set forth above and the terms, conditions and agreements set forth below, the parties hereto hereby agree as follows:

## 1. Incorporation of Guide by Reference

The Seller acknowledges that it has received and read the Guide and has the ability to sell, facilitate the table funding of, and/or service (as the case may be) mortgage loans in accordance with the Guide. All provisions of the Guide are incorporated herein by reference and made a part of this Contract and shall be binding upon the parties. All terms used herein shall have the respective meanings given such terms in the Guide.

## 2. Amendments

This Contract may not be amended or modified orally, and no provision of this Contract may be waived or amended, except in writing signed by the party against whom enforcement is sought. Such a written waiver or amendment must expressly reference this Contract. However, by its terms the Guide may be amended or supplemented by Company from time to time. Any such amendment(s) to the Guide shall be in writing and be binding upon the parties hereto on and after the effective date specified therein.

## 3. Warranties, Obligations and Representations

The Seller and Company each represent and warrant to the other that as of the date of this Contract:

1) Such party is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization, is qualified and licensed to do business in each jurisdiction in which it is required to be so qualified and licensed, except where the failure to be so qualified or licensed does not have a material adverse effect on the business operations or financial condition of such party, and has the required power and authority to enter into this Contract and all other agreements which are contemplated by this Contract and to carry out its obligations hereunder and under the Guide.

2) This Contract has been duly authorized, executed and delivered by such party and constitutes a valid and binding agreement of such party, enforceable against such party in accordance with its terms, subject, as to enforcement of remedies, to applicable bankruptcy, reorganization, insolvency or other similar laws affecting creditors' rights and to general principles of equity.

EXHIBIT ___2___
PAGE ___2___

3) There is no action, proceeding or investigation pending or threatened, nor any basis therefore known to such party, that questions the validity or prospective validity of this Contract or any license or approval under which such party operates.

4) Insofar as its capacity to carry out any obligation under this Contract is concerned, such party is not in violation of any charter, articles of incorporation, bylaw, mortgage, indenture, indebtedness, agreement, instrument, judgment, decree, order, statute, rule or regulation and no such obligation adversely affects its capacity to fulfill any of its promises or duties under this Contract. Such party's execution of, and performance pursuant to, this Contract will not result in a violation of any of the foregoing.

5) The representations, warranties and obligations stated in the Guide are hereby made or undertaken by Seller with respect to each of the mortgage loans to be sold to Company, table-funded by Company and/or serviced by Seller on behalf of Company (as the case may be), unless expressly waived in writing by Company. All representations and warranties made, and obligations undertaken, by Seller shall survive (i) any investigation made by or on behalf of Company, its assignees or designees, (ii) any liquidation of the mortgage loans, (iii) any purchase or funding of the mortgage loans by Company, its assignees or designees, (iv) the subsequent transfer of the mortgage loans and/or the servicing rights incident to the mortgage loans to any third party, (v) any suspension or termination of the Seller's privileges under or termination of this Contract, and (vi) the bankruptcy or insolvency of either party, and all such representations and warranties shall inure to the benefit of Company, its assignees or designees, and any transferee of any mortgage loan. Upon specific written request from Company, Seller shall supply evidence that is satisfactory to Company of its compliance with any provision of this Contract and the Guide.

## 4. Seller Duties

Seller shall diligently perform all duties incident to the sale, table funding and/or servicing, as applicable, of all mortgage loans which may be sold by Seller to, delivered by Seller for table-funding by, or serviced by Seller for, Company from time to time and such other mortgage loans as Company and Seller may mutually agree upon. In the performance of such duties, Seller shall comply with all of the applicable provisions of the Guide and with all other reasonable requirements and instructions of Company. Seller shall perform all such duties at its sole expense except as otherwise expressly provided in the Guide. Seller agrees to service (if servicing is retained) each of such mortgage loans continuously beginning with the purchase date for such mortgage loans, or the date of designation of Seller as replacement servicer for mortgage loans previously purchased by Company from another Seller, until all interest and principal on each mortgage loan has been paid in full, the mortgage loan has been liquidated as provided in the Guide, or such servicing duties are terminated by Company.

## 5. Documents and Records

Seller agrees to create, maintain and transmit all mortgage loan papers and documents including permanent mortgage loan account records in accordance with the Guide. With respect to such papers and documents, Seller shall have the custody privileges and Company shall have the property, inspection and other rights specified in the Guide. Seller shall maintain accurate records and books of account, an adequate system of audit and internal control, and shall conduct its servicing activities in a responsible and business-like manner. Seller shall promptly notify Company in writing of any activity or action, either internal or external, which could potentially affect adversely the terms of any mortgage loan serviced hereunder or the ability of Seller to service any mortgage loan for any investor, including Company.

## 6. Repurchase Obligations

The Guide sets forth the circumstances under which Seller is obligated to repurchase a mortgage loan from Company. Seller hereby agrees to effectuate any repurchase of a mortgage loan required by Company promptly in accordance with the terms and conditions of the Guide.


EXHIBIT _____ 2
PAGE _____ 29

## 7. Indemnification by Seller

Seller shall promptly indemnify Company from and hold Company harmless against all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses heretofore or hereafter resulting from or arising out of a breach of any representation, warranty or obligation of Seller contained in or made pursuant to this Contract or the Guide or from any act or omission by the Seller under this Contract or the Guide, or from any claim, demand, defense or assertion against or involving Company, including without limitation, from Company's assignee or transferee with respect to any mortgage loan, based on or grounded upon, or resulting from such breach or a breach of any representation, warranty or obligation made by Company in reliance upon any representation, warranty or obligation made or undertaken by Seller contained in or pursuant to this Contract or the Guide. The obligations of Seller under this paragraph shall survive delivery and payment for the mortgage loans and termination of this Contract or the expiration hereof. Attorneys' fees and disbursements incurred in enforcing, or on appeal from, a judgment pursuant hereto shall be recoverable separately from and in addition to any other amount included in such judgment, and this clause is intended to be severable from the other provisions of this Contract and to survive and not be merged into such judgment.

## 8. Seller's Status as Independent Contractor

At no time shall the Seller represent that it is acting as an agent, partner or joint venturer of Company. The Seller shall, at all times, act as an independent contracting party.

## 9. Assignment

This Contract, the Guide and any related master commitments may not be assigned or transferred, in whole or in part, by the Seller without the prior written consent of Company. CWM Mortgage Holdings, Inc. ("CWM"), a NYSE-traded real estate investment trust, owns all of the preferred stock and 99% of the economic interest of Indy Mac. Seller hereby consents to the assignment by Company of all of its rights and obligations under this Contract to CWM or another Company affiliate designated by CWM. Any other transfer by Company will be allowed and be effective upon written notice by Company to the Seller.

## 10. Notices

All notices, requests, demands or other communications that are to be given under this Contract shall be in writing, addressed to the appropriate parties and either sent by certified mail, return receipt requested, postage prepaid, to the addresses below, or by facsimile to the facsimile numbers below. Any such notice, request, demand or other communications shall be deemed effective upon receipt.

If to Company, notice must be sent to the appropriate address or facsimile number specified in the Guide.

If to the Seller, notice must be sent to:

**ALAN BEN-PORAT**

**15928 VENTURA BLVD., SUITE 110      ENCINO, CA   91436-4401**

Facsimile Number: **(818)971-4300**

Attention:     **ALAN BEN-PORAT**

EXHIBIT ___2___
PAGE ___30___

## 11. Miscellaneous

This Contract, including all documents incorporated by reference herein, constitutes the entire understanding between the parties hereto and supersedes all other agreements, covenants, representations, warranties, understandings and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Contract. All section headings contained herein are for convenience only and shall not be construed as part of this Contract. Any provision of this Contract that is prohibited or unenforceable in any jurisdiction shall as to such jurisdiction be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction, and to this end, the provisions hereof are severable. This Contract shall be governed by, and construed and enforced in accordance with, applicable federal laws and the laws of the State of California, without reference to conflict of laws principles, and the Seller hereby agrees that any court action arising out of this Contract shall be brought in any court of competent jurisdiction within the State of California, County of Los Angeles. SELLER VOLUNTARILY AND KNOWINGLY WAIVES ANY RIGHT IT HAS TO A JURY TRIAL PURSUANT TO ANY COURT ACTION BROUGHT BY ANY PARTY TO THIS CONTRACT. This Contract may be executed in one or more counterparts, each of which shall constitute an original and all of which shall constitute the same Contract.

IN WITNESS WHEREOF, the duly authorized officers of the Seller and Company have executed this Contract as of the date first above written.

ATTEST:

Corporate Seal
(If none, so state.)

Seller

SKYLINE FINANCIAL CORP. DBA SKYLINE FUNDING
Name of Seller

Signature

ALAN BEN-PORAT
Typed Name

PRESIDENT
Title

**Independent National Mortgage Corporation**

By:

Name:

Title:

**Independent Lending Corporation, dba Construction Lending Corporation of America**

By:

Name:

Title:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## CV10- 1758 ODW (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Vanessa H. Widener (#203967)  vhw@amclaw.com
Jennifer S. Muse (#211779)  jsm@amclaw.com
Anderson, McPharlin & Conners LLP
444 South Flower Street, 31st Floor
Los Angeles, CA  90071-2901
Tele: (213) 688-0080; Fax: (213) 622-7594
Attorneys for Plaintiff FDIC as Receiver for Indymac Bank

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Federal Deposit Insurance Corporation as Receiver for Indymac Bank, F.S.B.<br><br>PLAINTIFF(S)<br><br>v.<br><br>RPM Mortgage, a California corporation dba Platinum Capital Group, a California corporation; Platinum Capital Group, a California corporation; Skyline Financial Corp., a California corporation; Skyline Financial Corp. dba Stratford, business entity unknown, and Stephanie Green, an individual    DEFENDANT(S) . | CASE NUMBER<br><br>**CV10-01758-ODW(RGX)**<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S):  <u>RPM Mortgage dba Platinum Capital Group; Platinum Capital Group; Skyline Financial Corp. dba Stratford; Stephanie Green</u>

A lawsuit has been filed against you.

Within <u>  21  </u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Vanessa H. Widener/Jennifer S. Muse</u> , whose address is <u>Anderson McPharlin & Conners, 444 South Flower St., 31st Floor, Los Angeles, CA  90071</u> . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  **1 0 MAR 2010** _____

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

COPY

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐ ) | DEFENDANTS |
|---|---|
| Federal Deposit Insurance Corporation as Receiver for Indymac Bank, F.S.B. | RPM Mortgage, a Calif. corp. dba Platinum Capital Group; Platinum Capital Group, a Calif. corp.; Skyline Financial Corp., a Calif. corp.; Skyline Financial Corp. dba Stratford, business entity unknown; and Stephanie Green |

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Vanessa H. Widener (#203967)   vhw@amclaw.com
Jennifer S. Muse (#211779)   jsm@amclaw.com
Anderson, McPharlin & Conners LLP
444 South Flower St., 31st Floor
Los Angeles, CA 90071-2901
Tele: (213) 688-0080  Fax: (213) 622-7594

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

[X] 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

[X] 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes [X] No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes [X] No    [X] MONEY DEMANDED IN COMPLAINT: $ 1,800,000 (approx)

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of Contract; Professional Negligence; Specific Performance; Fraud; Negligent Misrepresentation

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | [X] 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number:    CV10-01758

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes

If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)    [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[X]   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Platinum - Los Angeles; RPM - Contra Costa County; Skyline - Los Angeles; Green - Los Angeles |  |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**

Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____      Date **March 9, 2010**

Jennifer S. Muse

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |